UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00113-RJC

| | |
|---|---|
| CELESTA SHAE JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 9, 12). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Celesta Shae Johnson ("Johnson") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Johnson filed her application for disability insurance benefits on September 28, 2018, with an alleged onset date, as amended, of September 28, 2018. (Tr.[1] 29).

In denying Johnson's social security claim, the ALJ conducted a five-step sequential evaluation. *Id.* at 29–38. At step one, the ALJ found that Johnson had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 31. At step two, the ALJ found that Johnson

---

[1] Citations to "Tr." throughout the order refer to the administrative record.

had the following combination of severe impairments: diabetes mellitus, peripheral neuropathy, diabetic retinopathy, gastroparesis, fibromyalgia, depressive disorder, and anxiety disorder. *Id*. At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. *Id.* at 31–33. Before moving to step four, the ALJ found that Johnson had the residual functional capacity ("RFC") to perform light work as explained below:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(a) except can stand and walk for a total of 3 hours of an 8-hour workday; can sit for 6 hours of an 8-hour workday; changes in the work setting need to be infrequent and predictable; no fast paced tasks with strict production quotas; variable paced tasks with end of day production quotas would be acceptable.

*Id*. at 33. At step four, the ALJ found that Johnson could not perform any past relevant work but found at step five that Johnson could perform jobs that existed in significant numbers in the national economy. *Id*. at 37–38.

After exhausting her administrative remedies, Johnson brought the instant action for review of Defendant's decision denying her application for disability benefits. (DE 1).

## II.　　STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence.  *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775.  Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below.  *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Johnson argues that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that Johnson's testimony regarding her limitations was not fully supported.  (DE 10 at 11).  In support of this broad assertion, Johnson argues that the ALJ misevaluated the opinion of Dr. Fiore and misevaluated Johnson's testimony regarding her limitations.  *Id.* at 13–16.  The Commission disagrees, arguing that substantial evidence supports the ALJ's analysis of Johnson's physical and mental limitations.  (DE 13).

3

The Fourth Circuit has made clear that "an ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quotations omitted). "In other words, the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). Substantial evidence "need not be elaborate or even sophisticated, but rather, as discussed below, simply clear enough to enable judicial review." *T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293, 302 (2015). "Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Here, the ALJ's conclusion is supported by substantial evidence, and the ALJ built an accurate and logical bridge from the evidence to his conclude. The ALJ noted that Johnson testified that "she is unable to work due to her chronic health problems" including elevated sugar levels from diabetes, fecal incontinence from gastroparesis, and diabetic nerve pain, all of which, Johnson alleges, prevents her from sitting or standing for long periods of time. (Tr. 36). However, the ALJ found that while there is extensive medical evidence of diabetes, "the record does not document the inability to perform a range of sedentary work." *Id.* The ALJ found it noteworthy that Johnson did not report extreme limitations. Instead, Johnson reported to treating providers that she walks for exercise. *Id.* at 36. The ALJ also discussed how the medical evidence supported his decision. For example, the ALJ discussed, among other evidence, September 2018 treatment notes that Johnson "was previously discharged from the clinic due to noncompliance with

4

[diabetes] treatment;" April 2019 gastroenterology treatment notes that Johnson suffered from gastroparesis related to her diabetes; May 2020 treatment notes that Johnson had a normal gait and musculoskeletal findings and was doing well with an insulin pump; July 2020 treatment notes that Johnson does well when she regularly checks her blook sugar and that Johnson regularly walks her dogs on the greenway; ophthalmology treatment notes that after laser eye treatment Johnson testified that she not longer had vision problems; and notes from consultative physician, Dr. Black, that Johnson had a normal gait and muscle strength and was able to squat and rise from a sitting position with ease. *Id.* at 34–36. The ALJ also discussed the psychological examination of Dr. Fiore, who noted that Johnson had some symptoms of anxiety related to her health conditions. Dr. Fiore also noted that Johnson takes care of her daughter, makes supper, runs errands as needed, and performs household chores. *Id.* at 36. While the ALJ found Dr. Fiore's limitations an overstatement as Johnson had no mental health treatment records, the ALJ included limitations in the RFC to address these mental limitations. In addition to the treatment records, the ALJ discussed the persuasiveness of the opinions of the medical providers based on at least supportability and consistency. *Id.* at 36–37.

Based on the totality of the evidence, the ALJ limited Johnson to sedentary work as described in the RFC. While Johnson disagrees with the ALJ's ultimate decision, it is not for this Court to reweigh the evidence when the ALJ builds an accurate and logical bridge from the evidence to his conclusion that is supported by substantial evidence, which the ALJ has done here. Moreover, to the extent Johnson objects to the weight assigned to the medical opinions, for claims filed after March 27, 2017, like the present case, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."

5

20 C.F.R. § 404.1520c(a). The only requirement is that the ALJ discuss the factors of supportability and consistency when weighing the medical evidence. *Id.* §§ 404.1520(b)(2), (c)(1)-(2). The ALJ did so here.

In addition, while not specifically addressed in the ALJ's decision, an individual otherwise entitled to receive disability benefits "will not be entitled to these benefits if the individual fails, without good cause, to follow prescribed treatment that we expect would restore his or her ability to engage in substantial gainful activity." *SSR* 18-39 (Failure to Follow Prescribed Treatment). Here, Johnson's endocrinologist stated:

> She was very nonadherent, I gave her an ultimatum of either start taking care of herself doing her monitoring taking her insulin or stopped coming so at that time she chose[] to stop visiting our office.

(Tr. 597). Thus, even if there was an error, such error is likely harmless as Johnson's noncompliance may itself bar any disability claim stemming from diabetes. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Garner v. Astrue*, 436 Fed. Appx. 224, 226 (4th Cir. 2011) (applying the Sanders harmless-error standard in a Social Security-disability case); *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result").

### IV.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 9), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 12), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: June 16, 2022

*[Signature]*

Robert J. Conrad, Jr.
United States District Judge